IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PAUL D. TOMAS,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil No.  09-2373-JAR
                                        )
MICHAEL J. ASTRUE,                      )
COMMISSIONER OF                         )
SOCIAL SECURITY,                        )
                                        )
                Defendant.              )
_____)

## MEMORANDUM ORDER AND OPINION

This appeal is before the Court after a prolonged administrative and judicial process,

including two remands.  Upon the second remand, the Commissioner issued his decision finding

that plaintiff is not disabled and denying relief.  Seeking judicial review, Plaintiff filed an

Amended Complaint[1] and a brief  in support of relief.[2]  Defendant has filed a brief in response,[3]

and this matter is now ripe for the Court's determination.  Upon *de novo* review, the Court

affirms the decision of the Commissioner.

**I.      Procedural History**

In 2004 Plaintiff filed an application for disability insurance benefits,[4] claiming an onset

date of May 1, 2004; and in 2006, while his disability application was pending, plaintiff filed an

application for supplemental security income benefits based on disability.[5]  The two applications

_____

[1]Doc. 16.

[2]Doc. 20.

[3]Doc. 25.

[4]Social Security Act, tit. II,  42 U.S.C. §§ 401, *et seq.*

[5]Social Security Act, tit. XVI, 42 U.S.C. §§ 1381, *et seq.*

were consolidated for adjudication.  In February 2007, an Administrative Law Judge ("ALJ")

found that plaintiff was not disabled at any time before the date of his decision; the Appeals

Council denied plaintiff's request for review of this decision.  Plaintiff filed a Complaint in this

Court seeking judicial review and on May 13, 2008, this Court granted defendant's motion to

remand for further consideration.[6]

Upon this first remand, the Appeals Council noted that plaintiff had filed subsequent

claims for disability and supplemental security income benefits on October 15, 2007; so, the

Appeals Council included those claims in the adjudication.  After supplemental hearings, the

ALJ again found that plaintiff was not disabled at any time before the date of his decision.

Plaintiff again sought judicial review in this Court and on September 10, 2009 this Court

issued an agreed Order of Remand pursuant to Sentence Six of 42 U.S.C. § 405(g).[7]  The

Sentence Six Remand directed that:

> the Appeals Council will remand this case to an administrative law judge ("ALJ")
> to consider the medical evidence and the claimant's questionnaires that were
> entered into the electronic claim file prior to the October 2008 and February 2009
> supplemental hearings but omitted from the official paper record.  In addition, the
> ALJ will be directed to provide full disclosure of all medical and other evidence
> considered in reaching his decision by properly identifying all of the evidence in
> all sections of the claim file on a complete List of Exhibits, in accordance with the
> Court's requirements, including correcting the misnumbering of exhibits 21E
> through 29E on the existing exhibit list in file. The Appeals Council will further
> direct case reassignment to a different ALJ, as the case was previously remanded
> to the same ALJ, and will instruct the ALJ to consolidate yet another subsequent
> supplemental security income (SSI) claim file in July 2009 with the remanded
> claims.

Upon remand, the Commissioner complied with what this Court ordered; he considered

---

[6]*See Tomas v. Astrue,* No. 07-CV-02373, Docs. 13–15 (D. Kan. May 13, 2008) (R. at 376-90).

[7]Doc. 10.

the medical evidence and plaintiff's questionnaires that were electronically entered into the administrative record prior to the October 2008 and February 2009 supplemental hearings but omitted from the official paper record.  The Appeals Council directed assignment of the case to a different ALJ, Judge Christine A. Cooke.  Judge Cooke conducted another hearing, and as this Court directed in its order, she provided full disclosure of all medical and other evidence used in reaching her decision, including properly identifying all of the evidence, and correcting the misnumbering of certain exhibits.  Judge Cooke issued an comprehensive, twenty-six page decision concluding that plaintiff was not disabled.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[8]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of defendant.[10]

This Court will not reiterate in great detail Judge Cooke's exceptionally extensive findings and thorough analysis, but having conducted *de novo* review, the Court is satisfied that Judge Cooke's decision is fully supported by substantial evidence in the record, and applies the correct legal standards.

---

[8]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[9]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[10]*Id.*

3

### III.      Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the that the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."[11]  An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."[12]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[13]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[14]

Plaintiff does not challenge the ALJ's determination at step one that plaintiff is not presently engaged in substantial gainful activity.[15]   Nor does plaintiff challenge the ALJ's determination at step two that plaintiff had a medically "severe" impairment or combination of impairments.[16]  Nor does plaintiff challenge the ALJ's determination at step three that none of

---

[11]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[12]*Id.* §§ 423(d)(2)(A) 1382c(a)(3)(B).

[13]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[14]*Id.*

[15]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[16]The ALJ found that plaintiff had a history of an alcohol abuse disorder, in alleged sustained remission; degenerative disc disease of the lumbar spine, status-post lumbar discectomy in 1993; a history of pelvic fracture in 1997, status-post surgical reduction with associated plate emplacement; obesity; borderline to mild hypertension; a history of gastric reflux and peptic ulcer; and mild depression with anxiety-related features. The combination of these impairments imposes significant limitations upon his ability to perform basic work-related activities and is therefore "severe" within the meaning of the regulations.  Doc. 14 at 5.

plaintiff's impairments, nor the combination of impairments meet the Listing of Impairments or its medical equivalent.[17]

With this determination, the ALJ thus proceeded to step four, where the decision maker considers whether the impairment prevents the claimant from performing work that he has performed in the past.[18] "At step four, an 'ALJ must evaluate a claimant's physical and mental [residual functional capacity ("RFC")].'"[19] The RFC represents "the most that the claimant can still do despite her limitations, and must include all of the claimant's medically determinable impairments."[20] "If the claimant's RFC permits him to perform his prior work, benefits are denied."[21]

The ALJ found that plaintiff could not perform his prior work, so her analysis proceeded to step five. At the fifth and final step, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work in the national economy.[22] The ALJ must determine whether "there are sufficient jobs in the national economy for a hypothetical person with the

---

[17]The ALJ found, "[w]ith deference accorded to objective and clinical findings set forth in contemporaneous treatment notes and a report from a consultative medical examiner, as well as the medical opinions provided by state agency medical consultants and a medical expert at a prior hearing, the Administrative Law Judge finds claimant's lumbosacral, hip, obesity, hypertensive, and history of gastric reflux and peptic ulcer conditions combined have not resulted in the requisite degrees of anatomical deformity, bony abnormality, joint dysfunction, neurological deficits, ambulatory deficits, cardiological deficits, or gastrointestinal deficits sufficient to meet the specific severity requirements of any such impairments set forth under Sections 1.00, 4.00, 5.00, 11.00, or any other Section, of the Listing of Impairments." Doc. 14 at 5–6.

[18]*Williams*, 844 F.2d at 751 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)).

[19]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–*2 (July 2, 1996).

[20]*DeWitt*, 381 F. App'x at 784 (quotation marks and citations omitted).

[21]*Bowen v. City of New York*, 476 U.S. 467, 471 (1986).

[22]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Yuckert*, 482 U.S. at 141).

claimant's impairments, given his age, education, and work experience."[23]  "In posing hypothetical questions to the [vocational expert], the ALJ is required to identify only those physical and mental impairments borne out by the evidentiary record."[24]  If the Commissioner cannot establish that the claimant retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy," the claimant is entitled to benefits.[25]

## IV.    Discussion

### A.    *Step 5 Determination*

At Step 5, the ALJ found that plaintiff's physical RFC allowed plaintiff to perform "a broad world of unskilled work," but "physically is capable of up to only a limited range of light work."[26]  The ALJ found that because of plaintiff's limitations, he cannot perform all or substantially all of the requirements of the full range of unskilled light work.  Recognizing that plaintiff's "limitations erode the unskilled light occupational base," the ALJ elicited testimony from an impartial vocational expert concerning the extent to which plaintiff's limitations eroded the base of unskilled light work.  That expert testified that considering all of the stated limitations and restrictions, a person of plaintiff's age, education and past relevant work experience could perform some jobs within the light exertional level, jobs that exist in the national economy.  The vocational expert further testified that even if such person were

---

[23]*Talamantes v. Astrue*, 370 F. App'x 955, 959 (10th Cir. 2010) (internal quotation, citations, and alterations omitted).

[24]*Id.* (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)).

[25]*Williams*, 844 F.2d at 751.

[26]Doc. 14 at 24.

otherwise restricted to no more than sedentary exertion, with all other restrictions and limitations unchanged, the person could perform a wide range of unskilled sedentary occupations, jobs that exist in the national economy.  The ALJ thus concluded that plaintiff was not disabled.

Plaintiff challenges the ALJ's determination at step five that there are sufficient jobs in the national economy for a hypothetical person with plaintiff's impairments.  Plaintiff argues that defendant has failed its burden of demonstrating that there are available jobs in the economy. But plaintiff wholly fails to discuss, elaborate on, explain or support this argument.  The Court will not speculate as to plaintiff's basis for this argument, but finds upon *de novo* review that defendant more than adequately explained and supported its finding at that step of the analysis, and that there is substantial evidence in the record supporting that determination, based on the testimony of the vocational expert.

### B.  *RFC Determination*

### 1.  Legal Standard

Plaintiff further asserts that in making the RFC determination, the ALJ failed to apply the correct legal standards.  While citing to a number of cases from the Eighth Circuit, [27] plaintiff never addresses which legal standards the ALJ purportedly did not correctly apply.  Upon *de novo* review, the Court finds that the ALJ cited to and applied the correct legal standards.

### 2.  Factual Basis

Plaintiff also factually challenges the ALJ's RFC determination.  The ALJ made two RFC determinations, one for physical limitations, one for mental limitations.  Plaintiff only addresses the physical RFC in his brief, arguing that the ALJ improperly failed to give

---

[27]The District of Kansas is within the Tenth Circuit Court of Appeals, and cases from the Tenth Circuit are the controlling authority for this Court.

controlling weight to the opinions of his treating physician, Dr. Maxfield, and gave improper weight to the testimony of Dr. Brovender, a consulting physician. Since neither Dr. Maxfield nor Dr. Brovender opined about plaintiff's mental health, therefore, it appears that plaintiff is only challenging the physical RFC determination. Nevertheless, the Court has undertaken a *de novo* review of the medical and other evidence concerning the ALJ's determination of plaintiff's mental RFC,[28] and the Court finds that the ALJ's mental RFC determination is supported by substantial evidence and a proper assessment of the relative weight to accord to the various medical practitioners who either treated or examined plaintiff, or reviewed the record and consulted with defendant about plaintiff's mental health and limitations.

Plaintiff argues that the ALJ's physical RFC determination is the product of improperly failing to give controlling weight to the opinion of his treating physician Dr. Maxfield, failing to explain why she did not give Dr. Maxfield's opinion controlling weight, and erring in giving too much weight to Dr. Brovender's opinion, which was not supported by substantial evidence in the record. But, the ALJ expressly addressed Dr. Maxfield's opinion and expressly acknowledged that Dr. Maxfield was a treating physician. The ALJ acknowledged that she must give the most weight to a treating source's opinion, if supported by the evidence, while opinions of sources who have examined the claimant are given less weight, and opinions of sources, such as the sources in this case, who merely review the claimant's records are to be given the least amount

---

[28]The ALJ found that plaintiff had the mental RFC to preclude perform jobs in which he is expected to understand, remember, or carry out detailed instructions; and jobs requiring public contact during the performance of job duties. The ALJ found that plaintiff could do jobs requiring no more than occasional contact with coworkers and supervisors, as well as jobs that require the ability to understand, remember, and carry out simple tasks or instructions and use simple judgement consistent unskilled work. Finally the ALJ found that plaintiff could interact appropriately within the above-cited social limitations, and adequately adapt to changes in a routine work setting

of weight.[29]   The ALJ went on to appropriately analyze and expressly explain why she did not give controlling weight to the opinion of Dr. Maxfield, and in doing so, the ALJ appropriately applied the factors outlined in *Goatcher v. U.S. Dep't of Health & Human Services*[30]: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[31]

   a.      **Dr. Maxfield's Treatment Records**

The ALJ noted that Dr. Maxfield had a treatment relationship with plaintiff from March 2007 through September 2008.  Dr. Maxfield treated plaintiff for his complaints of back and leg pain, as well as cardiologic concerns, routinely conducting musculoskeletal examinations, periodically referring plaintiff for radiologic consults, and in 2008, referring plaintiff to the rehabilitation department at the same facility, Kansas University Medical Center, to evaluate and treat plaintiff for his complaints of pain.  Most importantly, the ALJ evaluated Dr. Maxfield's December 2008 Medical Source Statement, in which she rendered opinions on plaintiff's exertional limitations, in the light of Dr. Maxfield's own examination and treatment records, and in light of all other relevant evidence in the record as a whole.  Like the ALJ, this Court finds

[29]*See Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987).

[30]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[31]*Id.*

9

that Dr. Maxfield's contemporaneous records do not support her opinions concerning the degree of plaintiff's exertional limitations in lifting, carrying, standing, sitting, walking, pushing and pulling.   And, like the ALJ, this Court finds that the treatment records of other providers, as well as other relevant and substantial evidence, such as plaintiff's testimony and the statements of plaintiff and his friends in various disability questionnaires, do not support Dr. Maxfield's opinions.

The ALJ's RFC determination and Dr. Maxfield's opinions concerning plaintiff's exertional limitations differ only in certain respects; and the Court addresses only the differences in this decision.   The ALJ's RFC determination included findings that plaintiff could: (1) lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; (2) sit at least six hours in a normal eight hour workday with normal breaks; and (3) stand or walk up to 30 minutes at a time and up to four hours total throughout the course of a normal eight hour workday with normal breaks.   In comparison, Dr. Maxfield opined that plaintiff could: (1) occasionally or frequently lift or carry no more than 10 pounds, and pushing and pulling was limited in the lower extremities with "manually reduced ROM in lower extremities/pelvis;" (2) sit less than six hours a day, and only by periodically alternating with standing, for plaintiff "has significant pain after sitting/standing more than 1-2 hours;" (3) stand or walk at least two hours but less than six hours in an eight hour workday.

The Court finds that the ALJ properly did not give controlling weight to Dr. Maxfield's opinion that plaintiff could lift or carry no more than 10 pounds and that pushing and pulling was limited in his lower extremities.   Dr. Maxfield rendered her opinions on plaintiff's exertional limitations in the form of checkbox responses, providing only minimal narrative explanation of

her opinions.[32]  With respect to lifting and carrying, she wrote "Pt has history of ftx pelvis &

spine.  He should <u>NOT</u> be carrying or lifting anything over 10 lbs."

Yet, Dr. Maxfield's own treatment records do not express such a limitation, nor support a

limitation to that degree.  Nor do her treatment records support her opinion that plaintiff is

limited in his ability to push or pull with his lower extremities.  In fact, Dr. Maxfield's treatment

records, while recording plaintiff's subjective complaints of pain in his lower back and legs,

provide no objective or clinical findings supporting the degree of limitations in her December

2008 opinion.  Rather, Dr. Maxfield's treatment records reflect that from March 2007 to

September 2008, she provided a conservative course of treatment to plaintiff for his complaints

of pain in his lower back and legs.  She consistently prescribed Flexeril, never increased the

dosage, suggested that plaintiff could supplement with over the counter pain medications, and

only in August 2008 did she prescribe another medication, Ultram.  At the same time, Dr.

Maxfield consistently advised plaintiff to lose weight; he weighed 250-270 pounds, too much

weight for his 5'5" frame.  She also consistently advised plaintiff to exercise, at times suggesting

certain exercises, including walking and stretching.

Her conservative course of treatment was consistent with Dr. Maxfield's clinical

findings.  Although Dr. Maxfield's musculoskeletal examinations of plaintiff revealed tenderness

and limited range of motion in his lumbar spine, virtually all other findings were normal.

Plaintiff had normal spinal alignment, normal range of motion in other extremities and parts of

his body, no joint enlargement and tenderness and normal strength.

---

[32]*See Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir.1988)(finding an RFC consisting solely of boxes
checked to indicate conclusions is not substantial evidence when "standing alone, unaccompanied by thorough
written reports or persuasive testimony.").

Dr. Maxfield's conservative course of treatment and her record of clinical findings similarly do not support her opinions that plaintiff "has significant pain after sitting/standing more than 1-2 hours," and can stand or walk at least two, but less than six hours a day.  Other than plaintiff's subjective complaints, the genesis of  Dr. Maxfield's opinions is not at all evident; and her clinical findings and treatment records make no objective notation of such limitations.  In fact, some of her treatment records note that plaintiff was in "no apparent distress," despite his subjective complaints of pain to the doctor.  Thus, the ALJ properly did not give Dr. Maxfield's opinions controlling weight, for her opinions were not supported by her own records.

### b.        Other Treating Physicians' Treatment Records

The Court further finds that Dr. Maxfield's opinions were not supported the treatment records of other treating physicians.  These other treatment records over the course of seven years do not support Dr. Maxfield's opinions.  In 2005,  Dr. Griffith examined plaintiff and found that he had strength of 5/5 in bilateral upper extremities and 4/5 in bilateral lower extremites.  In November 2005, Dr. Silver did a muscoloskeletal examination and determined that plaintiff had strength of 5/5 in all four extremities and full range of motion.  Dr. Silver also noted that, despite plaintiff's history and current complaints of back pain, he had stopped taking a pain medication prescribed by another physician at St. Joseph's Hospital.  In 2006, plaintiff was treated at the Pain Clinic at St. Joseph's Hospital, where he was prescribed Neurontin, which reportedly improved the pain in his lower back and legs, yet plaintiff later ceased taking this medication.  Plaintiff was seen briefly by Dr. Ngo in 2006, whose examination revealed only "mild tenderness upon palpation of lower back," and "[b]ack examination showed normal range

of motion."  Dr. Ngo also prescribed a conservative course of treatment, an over the counter medication for arthritis and noted that plaintiff "can undergo exercise testing and/or participate in exercise program."  In July 2008, plaintiff was seen by Dr. Zaudke, whose examination revealed normal spinal alignment, normal range of motion and some tenderness in his left lower paraspinal.  Like Dr. Maxfield, who plaintiff was seeing during this same time period, Dr. Zaudke prescribed Flexeril for the pain, and recommended that plaintiff exercise.

From about March 2008 to August 2008, plaintiff was seen in the rehabilitation medicine department at the University of Kansas Medical Center, on referral from Dr. Maxfield.  Those doctors' examinations continued to reveal that plaintiff had pain and a limited range of motion in his lumbar spine, yet they did not change or increase his prescribed medication, and like Dr. Maxfield, they recommended that plaintiff commence a dietary and exercise program.  In fact, in March 2008, one doctor recommended that plaintiff commence exercise, including "15 minutes of activity of walking or climbing the stairs in his high rise apartment building twice daily." And, in August 2008, Dr. Mongeau recommended that plaintiff do aquatic exercise.  Plaintiff was also advised to cease smoking and consuming alcohol and to decrease his intake of caffeine. Dr. Maxfield as well as the doctors in the rehabilitation department noted that plaintiff had declined to follow their recommendations to diet and exercise.

      c.      **Plaintiff's Subjective Complaints**

Furthermore, the ALJ properly declined to give controlling weight to Dr. Maxfield's opinions because the opinions concerning plaintiff's exertional limitations were not supported by other evidence in the record, such as plaintiff's testimony, as well as the statements of plaintiff and his friends in various disability questionnaires about his exertional limitations.  The Court

will not reiterate the ALJ's extensive discussion of plaintiff's various statements, but upon *de novo* review, finds that the ALJ properly considered and concluded that plaintiff's subjective complaints with respect to the degree of his limitations must be viewed with caution, given his inconsistent and conflicting statements, his failure at times to take prescribed medication, and his consistent failure to follow the various doctors' recommendations to diet and exercise and cease smoking and consuming alcohol,[33] despite periodic statements that he was exercising and neither smoking nor drinking.[34]

Moreover, since plaintiff's subjective complaints of pain underlie many of his claims of exertional limitations, the Court finds that the ALJ properly considered and evaluated plaintiff's testimony, statements and subjective complaints in accordance with the Tenth Circuit's factors outlined in in *Luna v. Bowen.*[35]  In *Luna*, the Tenth Circuit articulated the proper framework for analyzing evidence of nonexertional symptoms, including pain.[36]  The relevant factors are (1) whether the objective medical evidence establishes the claimant has a physical or mental impairment capable of producing the nonexertional limitation at issue; and (2) if so, whether a

---

[33]In March of 2007, plaintiff reported to doctors at Truman Medical Center that he drank 3-4 beers once a month and ½ pint tequila once a month and had last consumed alcohol a week before.  In June 2007, plaintiff reported to Dr. Garwood, a psychiatrist, that he had not drank for four months.  In December 2007 plaintiff reported to Dr. Bean that he stopped drinking about eight months before.  In November and December 2007, he reported to Dr. Maxfield that he drinks 3-5 beers once a week.  In February 2008, plaintiff reported that he drank 3-5 beers, once a week.  In a Drug and Alcohol questionnaire completed in September 2008, plaintiff claimed he was "[n]ot actively drinking now."  In 2004, plaintiff reported to Dr. Bayless at Truman Medical Center that he had quit smoking.  In March 2006, he reported to Dr. Lucas that he had quit smoking two months prior.  In June and September 2007, Dr. Maxfield's records reflect that plaintiff smoked 2 ½ packs per day.  In October 2008, plaintiff told Dr. Leight that he only smoked ½ pack a week because he had no income.

[34]*See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)( the ALJ's credibility determinations are peculiarly within the province of the ALJ as the finder of fact and should not be upset so long as the credibility determinations are closely and affirmatively linked to substantial evidence.)

[35]834 F.2d 161 (10th Cir. 1987)

[36]*Id.* at 163–65.

14

loose nexus exists between the impairment and the nonexertional limitation alleged; and (3) if so, whether the nonexertional limitation is disabling based on all objective and subjective evidence.[37]  Some of the possible factors that the ALJ should consider at the final step include the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[38]  In short, these factors support the ALJ's determination that Dr. Maxfield's opinions should not be given controlling weight, and these factors obviously further guided the ALJ's determination of the proper RFC.

###### d.        Evidence in Support of the ALJ's RFC Determination

The ALJ must give the most weight to a treating source's opinion, if supported by the evidence, while opinions of sources who have examined the claimant are given less weight, and opinions of sources, such as the sources in this case, who merely review the claimant's records are to be given the least amount of weight.[39]  Given that her opinions on certain limitations were not supported by the evidence, in determining the RFC, the ALJ gave some, but not controlling, weight to Dr. Maxfield's opinions, but also gave some weight to the opinions of various physicians who had either examined plaintiff, or reviewed plaintiff's records for purposes of

---

[37]*See id.*; *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

[38]*See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991); *Wiley v. Chater*, 967 F. Supp. 446, 450 (D. Kan. 1997).

[39]*Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987).

rendering an opinion.  But, notably, the ALJ's ultimate determination of RFC was not based

solely on the opinions of the non-treating physicians.[40]  And, the ALJ determined an RFC based

on all of the evidence, not an RFC that wholly adopted the opinion of any one physician.[41]

       Plaintiff argues that the ALJ gave too much weight to the opinion of Dr. Brovender.  But

the ALJ did not adopt or wholly agree with the opinion of Dr. Brovender, who reviewed

plaintiff's medical records and then testified at an ALJ hearing on February 4, 2009.  In

determining the weight to accord to Dr. Brovender's opinion, the ALJ clearly relied upon the

*Goatcher* factors,[42] including noting that Dr. Brovender was board certified orthopedist, the

specialty related to plaintiff's complaints, whereas Dr. Maxfield was a cardiologist.  Dr.

Brovender opined that, based on examinations in October and November 2007, plaintiff had full

range of motion in his upper and lower extremities and normal motor neurological and sensory

findings, he believed plaintiff could sit for eight hours, but stand or walk for no more than four

hours, with breaks, because of osteoarthritic changes in his spine, among other reasons.  Dr.

Brovender further opined that plaintiff could push or pull 50 pounds occasionally and 20 pounds

frequently.  Yet, the ALJ obviously gave little weight to Dr. Brovender's opinion about pushing

and pulling 50 pounds, for the ALJ found that plaintiff's limitation was 20 pounds occasionally

---

[40]*Cf. Kizer ex rel. Kizer v. Barnhart*, No. 04-1394, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006)
(upholding the ALJ's decision to give substantial weight to the opinion of a state agency reviewing psychologist,
noting that "[i]n appropriate circumstances, opinions from State Agency medical and psychological consultants and
other program physicians and psychologists may be entitled to greater weight than the opinions of treating or
examining sources.")

[41]*See James v. U.S. Dep't of Health & Human Servs.*, No. 94-6124, 1995 WL 65454, at *1 (10th Cir. Feb.
17, 1995) (holding that regulations do not unequivocally require an RFC report from either a consulting physician or
a treating physician and noting earlier holding that RFC forms could be completed by ALJs without medical
assistance, where RFC forms previously were prepared by medical consultants at earlier stages of the case).

[42] *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

and 10 pounds frequently.  And the ALJ did not agree with Dr. Brovender that plaintiff could sit

for eight hours; the ALJ found that plaintiff could sit for no more than six hours a workday.

However, the ALJ did give weight to Dr. Brovender's opinions about the degree of limitations in

standing and walking, for the ALJ reached the same conclusions that plaintiff could stand or

walk no more than fours a day.

The Court finds that the ALJ's determination that plaintiff could sit for no more than six

hours and stand or walk no more than four hours is supported by substantial evidence in the

record.  Other physicians examined plaintiff and found that he had no apparent discomfort in

sitting for periods of time, nor apparent difficulty in standing or walking; and the ALJ observed

as much at the hearing.  For example in December 2007, Dr. Duncan did a consultative

examination of plaintiff, noting plaintiff's complaints of pain in his lower back and knees.  But

upon examination, and with the benefit of radiologic studies as well, Dr. Duncan found normal

range of motion in all joints, that plaintiff walked normally without an assistive device and was

able to get on and off the examination table without difficulty, and that plaintiff had no difficulty

with heel and toe walking nor with squatting and arising from the sitting position.  Dr. Duncan

did find a limited range of motion of the lumbar spine and noted that plaintiff could bend 12

inches to the floor, but had stable gait and station, no difficulty with orthopedic maneuvers and

no assymetrical reflex, sensory or motor deficit.

Also in December 2007, Dr. Bean, a consultative psychologist, noted that although

plaintiff walked "somewhat slowly and slightly stiffly," he seated himself "without any apparent

difficulty and remains seated without apparent discomfort during the evaluation."  And, in May

2008, Dr. Siemsen, another consultative physician, reviewed the records and opined that plaintiff

could stand, sit or walk about six hours a day, explaining that the clinical records revealed that plaintiff had a normal gait, full range of motion in all joints except the lumbar spine, could bend 12 inches to the floor and had no difficulties with orthopedic maneuvers, and that plaintiff's complained of pain was not worsening.

Moreover, plaintiff's own reports of his limitations and activities of daily living support a limitation of four hours a day for standing and walking, and six hours a day for sitting.  In a work history questionnaire completed in November 2007, plaintiff admitted that in 2006, after the onset date of alleged disability, he worked as a dishwasher, and had to stand or walk for eight hours a day, as well as perform a variety of other exertional activities.  At times plaintiff reported being able to walk a half mile at a time, being able to "workout," as well as being able and to perform certain household chores which would require standing or walking for multiple hours. At times plaintiff and/or his friends reported that plaintiff sat and watched t.v. most of the day without difficulty, or sat at a public library and used a computer for prolonged periods of time.

Similarly, plaintiff's various statements and testimony support a finding that he could frequently lift 10 pounds and occasionally 20 pounds.  Plaintiff admittedly performed work as a dishwasher in 2006 which required a number of activities, including lifting and carrying. Work history is a proper factor to consider is assessing credibility.[43]  Plaintiff testified in January 2007 that he could lift 30 pounds.  In his multiple disability questionnaires, he admitted to lifting 30 pounds at a time and 20 pounds overhead.  In subsequent questionnaires, he and his friends reported that he can lift 10-15 pounds at a time.  His several reports of daily activities show that he performs household activities that require lifting or carrying up to ten pounds, including

---

[43] *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995);Billups v. Barnhart, 322 F.Supp.2d 1220, 1226 (D.Kan. 2004).

shopping for groceries, doing laundry and light housecleaning.

## V.      Conclusion

In short, the ALJ's decision not to give controlling weight to the opinion of the treating physician was proper, because the opinion of the treating physician was not supported by substantial evidence.  The ALJ carefully evaluated the opinions of the treating physician, as well as the examining and consulting physicians and thoroughly reviewed all the evidence in the record, applying the proper legal standards in evaluating plaintiff's credibility as well as plaintiff's subjective complaints of pain.  The ALJ reached the proper conclusion concerning plaintiff's RFC and thus the opinion of the vocational expert that plaintiff could perform certain work in the national economy was proper as well.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **Affirmed.**

**SO ORDERED**.

Dated: August 1, 2011

 S/ Julie A. Robinson_____
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE